IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MELISSA M.,[1]

      **Plaintiff,**

v.

      Civil Action 2:21-cv-3759
      Judge Sarah D. Morrison
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Melissa M., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF No. 8).  Plaintiff did not file a reply.  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff protectively filed her application for benefits on February 11, 2019, alleging that she has been disabled since June 9, 2018, due to chronic irritable bowel syndrome ("IBS"), anxiety, fecal incontinence, depression, vitamin D deficiency, diarrhea, urinary incontinence,

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

scoliosis, back pain, and fatigue.  (R. at 148-151, 175.)  Plaintiff's application was denied initially in June 2019 and upon reconsideration in August 2019.  (R. at 64-97.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 106-107.)  Administrative law judge Jeannine Lesperance (the "ALJ") held a telephone hearing on September 22, 2020, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 35-63.)  A vocational expert ("VE") also appeared and testified.  (*Id.*)  On October 23, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-34.)  The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-6.)

## II.     RELEVANT RECORD EVIDENCE

### A.  Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's statements to the agency and the relevant hearing testimony as follows:

> [Plaintiff] reported that she lives in a home with her family, she manages her personal care, and cares for her son by cooking for him, washing him, and giving him medications. Additionally, she reported that she cares for her dog, watches television and movies, prepares meals, washes dishes, does laundry, travels by driving or riding in a car, shops for groceries, can pay bills and manage her finances, can pay attention for 20 to 30 minutes, can follow written and spoken instructions, and gets along well with authority figures, but has difficulty handling stress and changes in routine. During a 2019 psychological consultative examination, [Plaintiff] reported that she independently manages her personal care, cares for her son, watches television, enjoys working puzzles, interacts with her family members, does household chores, prepares meals, and that she drives.
>
> \*\*\*
>
> During the hearing, she testified that, when she was working, she would have to use the bathroom at least 8 times a day, for 15 minutes respectively, due to [IBS].
>
> \*\*\*

> During the hearing, [Plaintiff] admitted that she last saw a specialist in January of 2017, who noted that her last endoscopy was in 2009 and recommended that the procedure be repeated in 2017; however, she did not follow up with him. Additionally, she admitted that she has not required emergency room treatment for dehydration or other effects of chronic diarrhea and vomiting. Moreover, despite her allegations of diarrhea up to 10 times a day and vomiting with nausea, the record documents [Plaintiff] remains obese, contradicting the expectation of at least some objective findings of nutritional deficits, resulting from the degree of chronic diarrhea, nausea, and vomiting that [Plaintiff] alleges.

(R. at 18-19, 21, 23 (internal citations omitted).)

### B. Relevant Medical Records

The ALJ summarized Plaintiff's relevant medical records and symptoms relating to her IBS[2] as follows:

> On March 11, 2019, Dr. Nancy Alkire diagnosed [Plaintiff] with conditions including lumbago, thoracic spine pain, scoliosis, neuropathy, fatigue, diarrhea, [IBS], nausea, and fecal incontinence.
>
> \*\*\*
>
> In January 4, 2017, [Plaintiff] sought treatment with complaints of [IBS] and abdominal pain, which occurred in the right side of the upper and lower abdomen. The record notes that [Plaintiff] had not undergone a trial of a classic anti-IBS regimen. A physical examination revealed normal findings, except [Plaintiff] was noted to be anxious. She was diagnosed with chronic abdominal pain, and [IBS], which is noted to be treated with prescribed medication. Thereafter, on February 9, 2018, the record notes that stress affects her IBS. Further, during a March 18, 2018 gynecological visit, [Plaintiff's] diagnoses include [IBS], which was noted is unchanged.
>
> Moreover, on January 7, 2019, [Plaintiff] was noted to have normal stools, but was noted to experience cramps at times. A physical examination revealed grossly normal findings, but she was noted to have anxiety and flutters in her chest when sitting or walking fast. Her diagnoses include [IBS]. Next, on September 30, 2019, [Plaintiff] reported that her stomach was bothering her a lot, since attaining a consultative examination for her disability claim, as the doctor had pushed really hard for her stomach, and she complained that her [IBS] was acting up as usual. Notably, the associated gastrointestinal examination revealed normal findings and no abdominal tenderness was noted. Her diagnoses included abdominal pain, IBS,

---

[2] Because Plaintiff's Statement of Errors, ECF No. 13, pertains only to her IBS and related issues, the Undersigned's discussion is limited to the same.

>obesity, weight gain[.]
>
>Due to [Plaintiff's] complaints of generalized abdominal pain, on October 9, 2019, a ultrasound of [Plaintiff's] abdomen was performed[;] however, the procedure was limited by the patient's large body habitus, a fatty liver was observed, and no other significant abnormalities within the abdomen were noted. During an October 25, 2019 physical examination, the clinical findings were grossly normal, including a normal gait, normal musculoskeletal range of motion, normal muscle strength and tone, and normal psychiatric findings. [Plaintiff's] diagnoses included abdominal pain, diabetes mellitus, [IBS], and obesity. Thereafter, the record documents diagnoses of IBS and diarrhea on June 30, 2020. However, on this date, the record failed to document physical examination or clinical findings to support the diagnoses.

(R. 21, 23-24 (internal citations omitted).)

The ALJ also weighed the medical source opinions of record as to Plaintiff's physical impairments as follows:

>I considered the opinion of Dr. Ellen J. Offutt[,] a medical consultative examiner, who evaluated [Plaintiff] on April 22, 2019 and diagnosed her with [IBS], hypertension, mild scoliosis with back pain, and morbid obesity. The record documents that Manual Muscle Testing results were normal and Range of Motion Testing revealed normal results. During the examination, Dr. Offutt noted that [Plaintiff] has never had any treatment for her back pain other than Ibuprofen; despite [Plaintiff's] allegations of [IBS] that causes chronic diarrhea, an examination of her abdomen revealed tenderness, but was otherwise negative. Dr. Offutt opined that [Plaintiff's] ability to perform work-related activities, such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, and pushing and pulling heavy objects, is at least mildly impaired. Accordingly, I find the consultative examiner's opinion to be overall non-persuasive, as said opinion is neither totally consistent with nor supported by the evidence of record, including her own clinical findings that were grossly normal, as the consultative examiner failed to provide a function-by-function analysis of limitations resulting from [Plaintiff's] medical impairments with vocationally relevant terms.
>
>Additionally, I reviewed and considered the opinions provided by Dr. Nancy Alkire, [Plaintiff's] primary care physician. Well before the alleged onset date, in 2011, 2015, 2016, and 2017, the record documents Dr. Alkire, requested that [Plaintiff] be approved for intermittent absences under the Family and Medical Leave Act (FMLA), due to symptoms including a spastic colon and abdominal pain and diagnoses including [IBS], diarrhea, and anxiety. While I note that this evidence is not within the relevant period at issue, it was admitted because it documents Dr. Alkire's history of treatment. Regarding limitations that [Plaintiff's] impairments impose on her ability to perform sustained work activity, on March

> 11, 2019, Dr. Nancy Alkire stated that [Plaintiff] has difficulty in all positions, due to sharp back pains, and noted that it is hard for [Plaintiff] to walk and carry items. Additionally, Dr. Alkire noted that [Plaintiff] had fecal incontinence issues at her usual job.
>
> Further, I considered an opinion statement prepared by Dr. Alkire on June 30, 2020, who diagnosed [Plaintiff] with back pain, anxiety, IBS, fibromyalgia, fatigue, hypertension, Type II diabetes mellitus, diarrhea, syncope, and scoliosis. She opined [Plaintiff] could lift and carry 30 pounds on an occasional basis and 5 pounds on a frequent basis; additionally, she opined that [Plaintiff] could stand and walk for less than 30 minutes (with normal breaks) during an 8-hour day and that she could sit for two hours (with normal breaks) on an 8-hour day. Further, she opined [Plaintiff] should never engage in postural activities. Moreover, she opined [Plaintiff] could frequently reach, handle, finger, feel, and push/pull. In addition, she opined that [Plaintiff] would be unable to sustain work activity for a full week or for a full month. Accordingly, I find Dr. Alkire's above-noted opinions to be nonpersuasive, as said opinions are neither consistent with nor supported by the evidence of record, including her own clinical findings and treatment notes that document a history of conservative care and grossly normal physical examination findings, including a normal gait, intact sensation, and normal muscle strength/tone in all four extremities. In addition, I note that Dr. Alkire's minimal treatment of [Plaintiff] contradicts the severity of the limitations she opined, as there is no evidence that she referred [Plaintiff] to specialists or that she utilized a variety of treatment modalities, over time, to treat the frequency or severity of incontinence or psychological symptoms alleged by [Plaintiff]. Additionally, I note that Dr. Alkire failed to address the fact that [Plaintiff] worked well over SGA for years despite essentially stable conditions, a significant inconsistency with respect to the severity of the limitations she attributes to [Plaintiff]. Moreover, I note the record fails the document recurring emergency care or inpatient hospitalizations for medical impairments.
>
> Next, I considered the opinions of the State agency medical consultants, who opined that [Plaintiff] retains the ability to perform work at the light level of exertion with exertional, postural, and environmental limitations. Accordingly, I find the medical consultants' opinions to be persuasive, as said opinions are consistent with and supported by the evidence of record, which documents objective findings that are reasonably consistent with [Plaintiff's] complaints of low back pain and a history of conservative care. Therefore, I adopted the same limitations, as those opined by the medical consultants, and I find that the limitations found within the above-stated RFC adequately account for and accommodate [Plaintiff's] complaints of low back pain by limiting the nature of her work activities.

(R. at 26-27 (internal citations omitted).)

### III. ADMINISTRATIVE DECISION

On October 23, 2020, the ALJ issued the non-disability determination. (R. at 12-34.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. (R. at 17.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff has not engaged in substantially gainful activity since June 9, 2018, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and obesity. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

    404.1567(b) except she could occasionally climb ramps and stairs; she could occasionally stoop and crouch; she could frequently balance, kneel, and crawl; she should avoid climbing ladders, ropes, or scaffolds; and she should avoid exposure to hazards, such as unprotected heights or working in proximity to exposed, moving mechanical parts.

(R. at 20.)

At step four of the sequential process, the ALJ determined that Plaintiff is capable of performing her past relevant work as a medical clerk, and that such work did not require the performance of work-related activities precluded by her RFC. (R. at 28.) The ALJ made an alternative step five finding, relying on the VE's testimony, that Plaintiff could perform other jobs that exist in significant numbers in the national economy such as a cafeteria attendant, cashier or assembler. (R. at 29.) The ALJ therefore concluded that Plaintiff has not been disabled under the Social Security Act, at any time since June 9, 2018, the alleged onset date. (*Id.*)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**V.     ANALYSIS**

Plaintiff sets forth two contentions of error: (1) the ALJ erred in not finding Plaintiff's IBS to be a "severe" impairment, and (2) the ALJ erred in omitting any allowance for time off task in Plaintiff's RFC. (ECF No. 13 at PAGEID ## 502-505.) First, Plaintiff argues that the ALJ's step two finding that Plaintiff's IBS was not a severe impairment was "not based on substantial evidence and is therefore erroneous," and submits that "[t]here is no indication in the remainder of the decision that the ALJ considered this impairment." (*Id.* at PAGEID ## 502-504.) Plaintiff also argues that "[e]ven if the ALJ did not err in finding [Plaintiff's] IBS a non-severe impairment . . . the ALJ's formulated RFC does not specify how much time off task [Plaintiff] would require due to the combined symptoms of her severe and non-severe conditions." (*Id.* at PAGEID ## 504-505.) In response, the Commissioner argues that "the first

8

alleged error is at most harmless as the ALJ found other impairments to be severe and continued with the sequential evaluation through step four," and that "[t]he second argument is not persuasive." (*See* ECF No. 18.) Plaintiff did not file a Reply brief, so the briefing is ripe for judicial review. The Undersigned will address each of Plaintiff's arguments in turn.

A.   The ALJ's Step Two Analysis

Regarding Plaintiff's first argument, the Undersigned finds that Plaintiff is mistaken that the ALJ's failure to recognize Plaintiff's IBS as a severe impairment at step two of the evaluation process constitutes reversible error. As the Court of Appeals for the Sixth Circuit and this Court have observed several times, step two of the evaluation process is merely meant to "screen out totally groundless claims," and it is well settled that where an ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citing *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987))); *see also Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 4592393, at *3 (S.D. Ohio Aug. 11, 2020) ("**Even assuming that the ALJ should have discussed plaintiff's alleged [impairment] at step two, any error from this omission was harmless**. Step two is the means by which the Commissioner screens out totally groundless claims, and is a '*de minimis* hurdle[.]'") (emphasis added; internal quotations and citations omitted).

Here, Plaintiff's step two argument is immediately undercut by her concession that "[t]he ALJ further discuss[ed] [Plaintiff's] IBS in her step four analysis." (ECF No. 13 at PAGEID # 502.) To that end, even if the Court agreed with Plaintiff (which the Undersigned does not) that

9

the ALJ should have found Plaintiff's IBS to be "severe" for purposes of the step two analysis, the ALJ's error would be nothing more than harmless, because the ALJ properly considered Plaintiff's IBS in crafting Plaintiff's RFC. "In other words, Plaintiff's argument 'raises a distinction without a difference . . . .'" *Robin B. v. Commisioner of Soc. Sec.*, No. 2:21-CV-96, 2022 WL 537576, at *4 (S.D. Ohio Feb. 23, 2022) (quoting *Fresquez v. Comm'r of Soc. Sec.*, No. 1:18-cv-114, 2019 WL 1440344 at *1 (S.D. Ohio Mar. 31, 2019) (declining to apply a different harmless-error analysis when the ALJ did not list plaintiff's chronic fatigue syndrome as a medically determinable impairment at step two yet considered it nonetheless in the RFC)). This ends the step two analysis which Plaintiff puts before the Court.

      The Undersigned also rejects Plaintiff's related argument that the ALJ's RFC is not supported by substantial evidence because Plaintiff believes she has identified record evidence which arguably could have supported either a reduced RFC or a finding of disability. (ECF No. 13 at PAGEID ## 503-504.) It is not the Court's job to find reversible error with the ALJ's decision if alternative, or even opposite, findings could have been reached. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted). Rather, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers*, 582 F.3d at 651 (quoting *Rogers*, 486 F.3d at 241).

      Here, in explaining how she determined Plaintiff's RFC, the ALJ discussed Plaintiff's IBS for five fulsome paragraphs, citing an abundance of record evidence in support of her conclusions:

Further, while [Plaintiff] alleges that [IBS] is a disabling condition, I find that the record fails to support this assertion, as the evidence fails to support the severity or frequency of the IBS symptoms alleged by [Plaintiff]. Moreover, the clinical diagnosis of IBS appears to based solely on [Plaintiff's] reported symptoms, as the record fails to document objective signs or findings to support a diagnosis of IBS or any other gastrointestinal impairment. The record as summarized below, documents scant treatment and only intermittent complaints, and does not to contain evidence that establishes that this condition would impact [Plaintiff's] ability to engage in competitive work activity. During the hearing, [Plaintiff] admitted that she last saw a specialist in January of 2017, who noted that her last endoscopy was in 2009 and recommended that the procedure be repeated in 2017; however, she did not follow up with him. Additionally, she admitted that she has not required emergency room treatment for dehydration or other effects of chronic diarrhea and vomiting. Moreover, despite her allegations of diarrhea up to 10 times a day and vomiting with nausea, the record documents [Plaintiff] remains obese, contradicting the expectation of at least some objective findings of nutritional deficits, resulting from the degree of chronic diarrhea, nausea, and vomiting that [Plaintiff] alleges.

Well before the alleged onset date, in 2011, 2015, 2016, and 2017, the record documents [Plaintiff's] primary care provider, Dr. Nancy Alkire, requested that [Plaintiff] be approved for intermittent absences under the Family and Medical Leave Act (FMLA), due to symptoms including a spastic colon and abdominal pain and diagnoses including [IBS], diarrhea, and anxiety.

In January 4, 2017, [Plaintiff] sought treatment with complaints of [IBS] and abdominal pain, which occurred in the right side of the upper and lower abdomen. The record notes that [Plaintiff] had not undergone a trial of a classic anti-IBS regimen. A physical examination revealed normal findings, except [Plaintiff] was noted to be anxious. She was diagnosed with chronic abdominal pain, and [IBS], which is noted to be treated with prescribed medication. Thereafter, on February 9, 2018, the record notes that stress affects her IBS. Further, during a March 18, 2018 gynecological visit, [Plaintiff's] diagnoses include [IBS], which was noted is unchanged.

Moreover, on January 7, 2019, [Plaintiff] was noted to have normal stools, but was noted to experience cramps at times. A physical examination revealed grossly normal findings, but she was noted to have anxiety and flutters in her chest when sitting or walking fast. Her diagnoses include [IBS]. Next, on September 30, 2019, [Plaintiff] reported that her stomach was bothering her a lot, since attaining a consultative examination for her disability claim, as the doctor had pushed really hard for her stomach, and she complained that her [IBS] was acting up as usual. Notably, the associated gastrointestinal examination revealed normal findings and no abdominal tenderness was noted. Her diagnoses included abdominal pain, IBS,

>obesity, weight gain[.]
>
>Due to [Plaintiff's] complaints of generalized abdominal pain, on October 9, 2019, a ultrasound of [Plaintiff's] abdomen was performed, however, the procedure was limited by the patient's large body habitus, a fatty liver was observed, and no other significant abnormalities within the abdomen were noted. During an October 25, 2019 physical examination, the clinical findings were grossly normal, including a normal gait, normal musculoskeletal range of motion, normal muscle strength and tone, and normal psychiatric findings. [Plaintiff's] diagnoses included abdominal pain, diabetes mellitus, [IBS], and obesity. Thereafter, the record documents diagnoses of IBS and diarrhea on June 30, 2020. However, on this date, the record failed to document physical examination or clinical findings to support the diagnoses. **Overall, I note that the record fails to support the severity or frequency of IBS symptoms alleged by [Plaintiff]. Further, I note that the record fails to establish that [Plaintiff's] primary treating source escalated her treatment of IBS by referring her to a specialist or by utilizing a variety of treatment modalities, beyond conservative care with prescribed medication. In addition, I note that the record fails to document recurring emergency care or inpatient hospitalizations for IBS. Therefore, I find that IBS is a non-severe impairment, as the record fails to support the severity and frequency of the symptoms alleged by [Plaintiff], and fails to establish that this condition significantly limits her ability to perform competitive work activity. Accordingly, I find that the record fails to support an adoption of additional RFC limitations, such as time off task or extra breaks, as [Plaintiff's] subjective complaints are not consistent with nor supported by the evidence of record.**

(R. at 23-24 (emphasis added; internal citations omitted).) As the Commissioner details, the ALJ's discussion cites to multiple doctors' notes and diagnostic tests from January 2017 through September 2020, and also notes Plaintiff's intermittent FMLA absences in 2011, 2015, 2016, and 2017. (ECF No. 18 at PAGEID ## 521-522.) The Commissioner also correctly notes that the ALJ found the prior administrative findings of the two State agency medical consultants – who considered Plaintiff's IBS to be a severe impairment but did not include any additional RFC restrictions beyond the ALJ's restrictions – to be persuasive. (*Id.* at PAGEID # 523 (citing R. at 27 (citing R. at 65-80, 82-94)).)

Accordingly, the Undersigned rejects Plaintiff's assertion that the ALJ's RFC was not supported by substantial evidence. Rather, the ALJ adequately acknowledged and discussed

12

Plaintiff's IBS. The ALJ analyzed the effect those symptoms had on how she devised Plaintiff's RFC, supporting her decision with substantial evidence from the record. *Rosshirt*, 2020 WL 4592393 at *3. Accordingly, Plaintiff's first assignment of error is not well taken.

**B.     The ALJ's Step Two Analysis**

Plaintiff's second assignment of error is related to the first, and it is similarly not well taken. The essence of Plaintiff's second assignment of error is that "the ALJ's formulated RFC does not specify how much time off task [Plaintiff] would require due to the combined symptoms of her severe and non-severe conditions." (ECF No. 13 at PAGEID # 504.) The Undersigned finds, however, that this argument is expressly undermined by the ALJ's decision. Specifically, as set forth above, the ALJ affirmatively discussed her finding that "the record fails to support an adoption of additional RFC limitations, **such as time off task or extra breaks**, as [Plaintiff's] subjective complaints are not consistent with nor supported by the evidence of record." (R. at 24 (emphasis added).) The ALJ did not fail to specify how much time off task Plaintiff would need – to the contrary, she expressly determined that the record failed to support *any* restriction to that end.

Again, the Undersigned finds no error, as the ALJ's conclusion is well supported by substantial evidence. Specifically, the ALJ cited the following record evidence which supports the ALJ's conclusion that Plaintiff's subjective complaints are not consistent with nor supported by, the evidence of record:

- **R. at 48:** Plaintiff's testimony that she last saw a specialist for her IBS in January 2017, and she did not follow up with that specialist or comply with the doctor's recommendations;

13

- **R. at 50:** Plaintiff's testimony that she has not required emergency room treatment for dehydration or other effects of chronic diarrhea and vomiting;

- **R. at 280:** A consultation report with William F. Emlich, Jr., DO, dated January 4, 2017, which noted that Plaintiff had not undergone a "trial of classic anti-IBS regimen to date";

- **R. at 282-283:** Physical examination notes from Dr. Emlich's January 4, 2017 consultation which revealed normal findings (except that Plaintiff was anxious) and noted Plaintiff's conservative treatment for IBS with prescription medication;

- **R. at 278:** A physical examination from March 13, 2018 which noted that Plaintiff's IBS was "unchanged";

- **R. at 369:** A gastrointestinal examination from September 30, 2019 that "revealed normal findings and no abdominal tenderness"; and

- **R. at 368:** A gastrointestinal examination from October 25, 2019 that revealed normal findings, "including a normal gait, normal musculoskeletal range of motion, normal muscle strength and tone, and normal psychiatric findings."

The ALJ also noted that Plaintiff's obesity "contradict[ed] the expectation of at least some objective findings of nutritional defects" in light of Plaintiff's allegations of chronic diarrhea (up to ten times per day), nausea, and vomiting. (R. at 23.)

Finally, the ALJ also discussed the *absence* of records which corroborated Plaintiff's subjective complaints, noting that "the record fails to establish that [Plaintiff's] primary treating source escalated her treatment of IBS by referring her to a specialist or by utilizing a variety of treatment modalities, beyond conservative care with prescribed medication" and that "the record fails to document recurring emergency care or inpatient hospitalizations for IBS." (R. at 24.)

14

The Commissioner also contrasts Plaintiff's FMLA absences in 2011, 2015, 2016, and 2017 with the fact that "Plaintiff was able to maintain her full-time employment throughout that period with earnings well above the threshold for substantial gainful activity." (ECF No. 18 at PAGEID # 522 (citing R. at 152).) To this end, the Undersigned agrees with the Commissioner that *Lapeen v. Comm'r of Soc. Sec.*, No. 14-cv-13150, 2016 WL 3125212 (E.D. Mich. June 3, 2016) is analogous. Here, as in *Lapeen*, the absence of medical evidence concerning the severity of Plaintiff's IBS symptoms supports the ALJ's conclusion that Plaintiff's subjective complaints were not fully credible – especially, as the ALJ discussed, given Plaintiff's history of treatment and management for years before she filed the subject disability application. *See Lapeen*, 2016 WL 3125212, at *6 ("[A]bsent objective medical evidence concerning the severity of Plaintiff's IBS symptoms, there is substantial evidence supporting the ALJ's finding that the IBS was not disabling, considering the steady treatment she received for over twenty years, significantly predating her disability application.").

For these reasons, the Undersigned finds ample substantial evidence from the record supports the ALJ's RFC determination, including the ALJ's specific finding that Plaintiff's RFC did not call for additional limitations such as time off task or extra breaks. Accordingly, Plaintiff's second assignment of error is not well taken.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: May 13, 2022**          */s/ Elizabeth A. Preston Deavers*
                                **ELIZABETH A. PRESTON DEAVERS**
                                **UNITED STATES MAGISTRATE JUDGE**